UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD DONALD MARCOTTE, III,

        Petitioner,                      Case No. 19-12113

v.                                                  HON. MARK A. GOLDSMITH

MARK W. MCCULLICK,

        Respondent.

_____/

**OPINION & ORDER**
**(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

This is a habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner Richard Donald Marcotte, III (Petitioner) was convicted of assault with intent to commit great bodily harm less than murder, Mich. Comp. L. § 750.84, following a trial in Michigan's Kalamazoo County Circuit Court. In 2016, he was sentenced as a fourth habitual offender, Mich. Comp. L. § 769.12, to 25–50 years' imprisonment. In his pleadings, Petitioner raises claims concerning the conduct of the prosecutor and the effectiveness of trial counsel (Dkt. 1). Respondent filed an answer to the habeas petition contending that it should be denied (Dkt. 5). For the reasons set forth below, the Court concludes that Petitioner is not entitled to relief on his claims, and it denies the habeas petition. The Court also denies a certificate of appealability and denies leave to proceed in forma pauperis on appeal.

# I. BACKGROUND

Petitioner's conviction arises from his stabbing of another man during an altercation in Kalamazoo, Michigan in 2015. The Michigan Court of Appeals described the relevant facts, which are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1); Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> On June 5, 2015, the victim, Bradley Holmes, his family, and his girlfriend, Mary Shief, attended a Greek festival and a concert in Kalamazoo, where they met and shared a few beers while listening to the music with their friends, Stephanie Gernaat and her boyfriend Andrew Brinkert. While Holmes, Shief, Gernaat, and Brinkert were heading back to the carport near an alleyway where their car was parked, Shief testified that Holmes stopped to admire a motorcycle owned by Geoffery Varner.[1] A fight soon erupted between Varner and Holmes. Defendant joined as the altercation grew more serious, stabbing Holmes multiple times.
>
> Initially, a friendly conversation had sparked between Varner and Holmes as Varner sat on the bike. Holmes testified that "while [he] was just trying to compliment [Varner] about his bike" "[Varner had] started saying provocative things about [Shief]," who had been standing right next to Holmes' side listening. Shief testified that she did not hear exactly what was said, but that Holmes turned around and told Varner "to be respectful." At first, Holmes stated, he had intended to ignore it. It was only after Varner made a sexually charged racial comment which "used the 'N' word" about Shief, who was African American, that Holmes "got in [Varner's] face." Subsequently, Holmes and Varner began to fight. As Holmes was on the ground wrestling with Varner, defendant[2] came up and kicked Holmes' side. Holmes also believed he was stabbed by defendant in the back while he and defendant were wrestling. Immediately after, Holmes said he thought he had been stabbed and asked Gernaat to call 911, which she did.

---

[1] Shief testified that Varner was with defendant and defendant's [now] wife, Althea Simmons, who were both sitting on a motorcycle next to Varner's.

[2] Holmes testified that he did not think defendant and Simmons were in any way connected to Varner or the dispute until after the confrontation began. Shief further testified that defendant came from nowhere and joined the fight after the fighting had become "intense."

Kalamazoo Public Safety Officer Brian Boyer was the first officer on the scene after he had received a call from station one in the city of Kalamazoo and a man flagged him down to tell him of the stabbing. This man gave him directions on how to get there. Simultaneously, dispatchers were giving out the same information to others. When Boyer first arrived and parked his police car,[3] people were yelling that there were two suspects farther down to the west. Boyer first tried to get everything settled down and helped to keep people away from the victim. As soon as the other officers came on the scene, he started to delegate tasks (i.e. for people to render aid, to begin interviewing witnesses, etc.) Kalamazoo Public Safety Officer Kristie Hofer also received a call to respond to 251 East Michigan regarding a stabbing, labeling the nature of the call received as being "vague and chaotic." Hofer testified that she searched for the weapon used to stab Holmes at the scene, but did not find one. Kalamazoo Public Safety Officer Jacob Vyverman testified that Varner agreed to be searched and informed him of having a small pocket knife in his coat pocket. Vyverman described the knife as a small, folding pocket knife. Vyverman testified that the pocket knife blade "was under three inches, and it was smaller than your average pocket knife that any man or woman would carry." Vyverman stated that he opened Varner's pocket knife and conducted a thorough search, describing how the knife had been dry with no blood or foreign objects on it and how he had examined the hilt of the knife to ensure that it was dry. Vyverman testified that he then gave it back to Varner, who was ruled out as a suspect there and then.

When asked at trial if there was a specific length that a knife would have to be to cause Holmes' injuries, trauma and brain surgeon Dr. James Kraatz,[4] who treated Holmes, testified as follows:

> The only thing that I could say with regard to that was that it would have to be long enough to penetrate through the muscle and through the skin, the subcutaneous fat, the fat that's under the skin, the underlying muscle, the muscle between the ribs and chest. And in general, in a person that has fairly normal amounts of body fat, that's gonna [sic] be probably two-and-a-half, three inches. It would have to be at least that long and you'd really be up to the

---

[3] Sergeant Boyer's vehicle was equipped with a camera called a DVR unit which is to record any conversation that a law enforcement officer or Sergeant conducts with a pedestrian.

[4] Dr. Kraatz was qualified as an expert at trial in the diagnosis and treatment of traumatic injuries and had testified in court more than ten times over the course of his approximately fifteen years in practice to serve in that capacity.

> > hub if it was that. I would anticipate that it would be something that'd probably be a little bit longer than that.
>
> During closing arguments, the prosecutor made the following statement to the jury:
>
> > So we have the officer saying the knife in [Varner's] pocket was less than three inches and the doctor saying the knife had to be at least three inches in order to cause the injuries.
> >
> > I submit to you that the knife in [Varner's] pocket that was examined by the police is not large enough to have caused the injuries in this case.
>
> Defense counsel immediately objected to these statements, arguing that the prosecutor was misstating Kraatz's testimony. Defense counsel stated, "[I]t says two-and-a-half to three. If we're gonna . . . be fair, let's keep it fair here." The trial court instructed the jury, "For the commentary, I simply advise the jury that you have your notes with regard to the evidence. What attorneys say may or may not comport with that. Trust your notes."

People v. Marcotte, No. 332852, 2017 WL 3722004, at *1–*2 (Mich. Ct. App. Aug. 29, 2017) (footnotes in original).

Following his conviction and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals, essentially raising the same prosecutorial misconduct and ineffective assistance of trial counsel claim presented on habeas review. The Michigan Court of Appeals denied relief on those claims and affirmed his convictions. Id. at *2–*5. Petitioner also filed an application for leave to appeal in the Michigan Supreme Court raising the same claims. In standard orders, the Michigan Supreme Court denied leave to appeal, People v. Marcotte, 910 N.W.2d 274 (Mich. 2018), and denied Petitioner's motion for reconsideration. People v. Marcotte, 915 N.W.2d 366 (Mich. 2018).

Petitioner, through counsel, then filed his federal habeas petition. He raises the following claims:

4

    I.      He was denied due process because the prosecutor mischaracterized the evidence about the size of the knife during closing arguments.

    II.     Defense counsel was ineffective because counsel: (i) advised Petitioner not to testify on his own behalf, which precluded a self-defense instruction, (ii) never requested that Officer Boyer's dash-cam video be shown in its entirety, and (iii) failed to call Althea Simmons to testify.

Respondent filed an answer to the habeas petition contending that the petition should be denied because the claims lack merit. Petitioner filed a reply (Dkt. 7).

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), codified at 28 U.S.C. § 2241 et seq., sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state-court convictions. The statute provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [United States Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15–16 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405–406 (2000)). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal

habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413). However, "for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been objectively unreasonable." Id. at 520–521 (punctuation modified, internal citation omitted). To obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). Thus, AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (punctuation modified).

Moreover, § 2254(d)(1) limits a federal habeas court's review to determining whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. Williams, 529 U.S. at 412. Federal circuit-court precedent does not constitute "clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), and it cannot provide the basis for federal habeas relief. Parker v. Matthews, 567 U.S. 37, 48–49 (2012). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue. Stewart v. Erwin, 503 F.3d 488, 493 (6th Cir. 2007).

A state court's factual determinations are presumed to be correct on federal habeas review. See 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. Id. For claims that were adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

### III. DISCUSSION

#### A. Habeas Petition

Petitioner asserts that he is entitled to habeas relief because (i) the prosecutor engaged in misconduct during closing arguments by mischaracterizing the testimony regarding the size of the knife used in the stabbing, and (ii) trial counsel was ineffective. The Court addresses each claim for relief in turn.

#### 1. Prosecutorial Misconduct Claim

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." Berger v. United States, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); see also Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citing Donnelly, 416 U.S. at 643); Parker v. Matthews, 567 U.S. 37, 45 (2012) (confirming that Donnelly/Darden is the proper standard). The standard "is a very general one, leaving courts more leeway . . . in reaching outcomes in case-by-case determinations." Parker, 567 U.S. at 48 (punctuation modified). "That leeway increases in assessing a state court's ruling under AEDPA" because the court "cannot set aside a state court's conclusion on a federal prosecutorial-misconduct claim

unless a petitioner cites . . . other Supreme Court precedent that shows the state court's determination in a particular factual context was unreasonable." Stewart v. Trierweiler, 867 F.3d 633, 638–639 (6th Cir. 2017) (punctuation modified).

The Michigan Court of Appeals denied relief on this claim, finding that the prosecutor's argument was proper and that any error was mitigated by the trial court's jury instructions. The court explained in relevant part:

> Defendant's theory of the case was that it was in fact Varner, not defendant, who stabbed Holmes. Defense counsel spent much of his closing argument casting doubt on the veracity of the witnesses to the crime. He argued that "the prosecutor is so afraid of that knife, he's arguing over a half-inch. He is trying to make you forget that the other assailant had a knife in his pocket . . . ."
>
> Again, the prosecutor argued that Kraatz testified that the knife that inflicted Holmes' wounds "had to be at least three inches long," and thus Varner's knife could not have caused the injury because Vyverman testified that Varner's knife was less than three inches. Kraatz opined that, based on the injuries sustained by Holmes, the knife blade that stabbed him had to be " . . . probably two-and-a-half, three inches. It would have to be at least that long and you'd really be up to the hub if it was that. I would anticipate that it would be something that'd probably be a little bit longer than that." The prosecutor's characterization of Kraatz's testimony was consistent with that testimony. In essence, Kraatz qualified his own testimony that the length would have to be "two-and-a-half, three inches" by indicating that length would probably be sufficient if the thrusts were "up to the hub" (reasonably understood to mean the bolster), but that in reality, he thought it would have to be longer than that cited range, i.e., longer than three inches. On rebuttal, the prosecutor acknowledged that he and defense counsel did not agree about the doctor's testimony.
>
> In any event, the court timely instructed the jury to refer to their notes and to trust their notes when determining the facts of the case, and later cautioned that "[w]hat attorneys say may or may not comport with that." Consistent with this, the court instructed the jury in its closing instructions that "the lawyers' statements and arguments are not evidence" and "[y]ou should only accept things the lawyers say that are supported by the evidence or by your own common sense and general knowledge." There is nothing in the record to undermine the well-established legal maxim that "jurors are presumed to follow their instructions."

Marcotte, 2017 WL 3722004, at *3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. While a prosecutor may not misstate the evidence, United States v. Carter, 236 F.3d 777, 784 (6th Cir. 2001), or argue facts not in evidence, Abela v. Martin, 380 F.3d 915, 929 (6th Cir. 2004), abrogated on other grounds by Guilmette v. Howes, 624 F.3d 286 (6th Cir. 2010), a prosecutor can make arguments based upon the evidence and has "leeway to argue reasonable inferences from the evidence during closing arguments." United States v. Crosgrove, 637 F.3d 646, 664 (6th Cir. 2011) (punctuation modified). Such was the case here. The prosecutor's argument was based on Dr. Kraatz's clarifying testimony in which he opined that the knife used in the stabbing was "probably a little bit longer" than the two-and-one-half to three inches that he had estimated, see 2/26/16 Jury Trial Tr. at PageID.617 (Dkt. 6-5), as well as his testimony that the knife "would have to be long enough to penetrate through the muscle and through the skin, the subcutaneous fat . . . the underlying muscle, the muscle between the ribs and chest." Id. Petitioner fails to show that the prosecutor's argument was improper.

Moreover, even if the prosecutor erred, the trial court's instruction to the jurors that they should consult their notes in determining the facts and that the lawyers' statements and arguments are not evidence, see 2/29/16 Jury Trial Tr. at PageID.717, 746 (Dkt. 6-6), cured any potential prejudice to Petitioner. Jurors are presumed to follow the trial court's instructions. See Penry v. Johnson, 532 U.S. 782, 799 (2001); United States v. Powell, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it."). Petitioner fails to show that the prosecutor's argument was improper or that it rendered his trial fundamentally unfair. Therefore, habeas relief is not warranted on this claim.

### 2. Ineffective Assistance of Trial Counsel Claims

Petitioner also asserts that he is entitled to habeas relief because trial counsel was ineffective for (i) advising him not to testify on his own behalf, thereby precluding a self-defense instruction (ii) never requesting that Officer Boyer's dash-cam video be shown in its entirety, and (iii) failing to call Althea Simmons to testify at trial.

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court set forth a two-part test for determining whether a habeas petitioner received ineffective assistance of counsel. First, a petitioner must show that counsel's performance was deficient. <u>Id.</u> at 687. This requires showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. <u>Id.</u> Second, a petitioner must establish that counsel's deficient performance prejudiced the defense. <u>Id.</u> This requires showing that counsel's errors were so serious that they deprived the petitioner of a fair trial or appeal. <u>Id.</u>

As to the first element, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" to prove deficient performance. <u>Id</u>. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. <u>Id</u>. at 689. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Id</u>. at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. <u>Id</u>. at 689. As to the second element, a petitioner proves prejudice by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. <u>Id.</u> "The benchmark for judging any claim of ineffectiveness must

be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." Id. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Harrington, 562 U.S. at 105 (punctuation modified, internal citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

Petitioner first asserts that trial counsel was ineffective for advising him not to testify at trial. Citing the Strickland standard and related state law, the Michigan Court of Appeals denied relief on this claim. The court explained in relevant part:

> Next, advising a client to exercise his right to remain silent is also a matter of trial strategy which defendant has an option of declining and so we shall defer to the trial attorney's judgement. "Although counsel must advise a defendant of this right, the ultimate decision whether to testify at trial remains with the defendant." People v. Bonilla-Machado, 489 Mich. 412, 419; 803 N.W.2d 217 (2011).

Marcotte, 2017 WL 3722004, at *5.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. A criminal defendant has a constitutional right to testify in his or her own defense or to refuse to do so. Rock v. Arkansas, 483 U.S. 44, 53 (1987). "The right to testify is personal to the defendant, may be relinquished only by the defendant, and the defendant's relinquishment of the right must be knowing and intentional." United States v. Webber, 208 F.3d 545, 550–551 (6th Cir. 2000). Counsel's role is to advise the

defendant about whether to take the stand, but the final decision is left to the defendant. Id. at 551; see also Jones v. Barnes, 463 U.S. 745, 751 (1983). On habeas review, there is "a strong presumption that trial counsel adhered to the requirements of professional conduct and left the final decision about whether to testify with the client." Hodge v. Haeberlin, 579 F.3d 637, 639 (6th Cir. 2009). "A defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel." Id. at 640 (punctuation modified). If the defendant fails to do so, waiver of the right to testify is presumed. Id.

Additionally, decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy. When making strategic decisions, trial counsel's conduct must be reasonable. Roe v. Flores-Ortega, 528 U.S. 470, 481 (2000); see also Wiggins, 539 U.S. at 522–523. The failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. Chegwidden v. Kapture, 92 F. App'x 309, 311 (6th Cir. 2004); Hutchison v. Bell, 303 F.3d 720, 749 (6th Cir. 2002).

In this case, Petitioner cites nothing in the record to substantiate his assertion that he wanted to testify but that trial counsel denied him the opportunity. Consequently, he fails to overcome the presumption that he willingly agreed with counsel's advice not to testify. See Gonzales v. Elo, 233 F.3d 348, 357 (6th Cir. 2000). Petitioner also fails to refute the presumption that counsel's advice that he not testify on his own behalf was sound trial strategy. Had Petitioner testified, he would have been subject to cross-examination by the prosecutor, who could have elicited damaging information from him. Moreover, while Petitioner claims that his testimony would have supported a self-defense instruction, his defense at trial was not

self-defense. Rather, his defense was that he was not the person who stabbed the victim. Trial counsel was able to present evidence and arguments in support of that defense, even without Petitioner's testimony. Petitioner was thus not deprived of a substantial defense at trial. He fails to establish that trial counsel was ineffective.

Petitioner next asserts that trial counsel was ineffective for failing to seek admission of Officer Boyer's entire dash-cam video. The Michigan Court of Appeals denied relief on this claim. The court explained in relevant part:

> Boyer testified that his squad car camera captured a video of the scene after police arrived and that video was played for the jury. Boyer testified that the video showed Simmons picking a "shiny" item up in the landscaped area where a helmet and other things had been dropped. Boyer further testified that the video showed Simmons walk away toward another alley after she had picked up the item. There was nothing found in the alley where she had walked down when the alleyway was searched. Defendant argues that were this video that Boyer describes to be seen in its entirety, the jury would see that the item picked up was a helmet and that, had the jury been able to see the full clip, they would have seen two officers were present at that time.
> 
> * * *
> 
> As the video played in the trial court below is not made available to this Court, we limit our review to what is described about the video during the witness's testimony, which is part of the record. At trial, Sergeant Boyer described the recording which was played for the jury, stating that the video showed how someone had dropped property in a grassy area near the scene of the stabbing and stated that subsequently " . . . [a] white female then proceed[ed] to pick up an object from the grassy greenish landscaped area . . . " and how the object she picked up was clearly "shiny" when she turned. The white female was subsequently identified by Boyer as Althea Simmons, defendant's wife. Then, he described how Simmons had walked into an alley in between two buildings for a short period of time, only to walk back into sight a short while later. Defense counsel objected to the relevance of the video and highlighted that the dropped object was in no way able to be linked to defendant, as he was absent throughout the clip. Furthermore, on cross-examination, defense counsel impeached the officer on his client's absence from that clip. The decision not to play the tape was obviously a strategic choice by defense counsel, which we will not second guess. [People v. Unger, 749 N.W.2d 272, 296 (Mich. Ct. App. 2008).]
> 
> Defendant's assertion that, had the full clip been played for the jury, they would have been able to see that there were two officers behind the vehicle with

13

> Simmons, making it impossible for her to have dropped the knife, is merely a speculative argument and such speculation is not nearly enough to presume counsel to have been ineffective. Boyer himself testified that he could not determine what the "object" was and that they did not find it. Further, this would be merely cumulative as the officers had already given testimony that they had been in that area at the time Althea picked the object up and walked into the alley, as in fact, Sergeant Boyer whose testimony has been stated above, was one such officer. Thus, the effect would be insufficient to undermine confidence in the outcome, Turner v. U.S., 137 S. Ct. 1885, 1887, 85 USLW 4488, 17 Cal. Daily Op. Serv. 5916 (2017), as one of the four elements which must be met to allow for defendant's motion to be granted for a new trial is that the evidence which was not originally submitted must not be merely cumulative. People v. Terrell, 289 Mich. App. 553, 559; 797 N.W.2d 684 (2010).

Marcotte, 2017 WL 2722004, at *3–*5.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, trial counsel was clearly aware of the dash-cam video, objected to its admission on relevancy grounds, noted that the helmet and other items in the video were excluded as being Petitioner's items, and chose not to request that the video be played in its entirety. 2/26/16 Jury Trial Tr. at PageID.678–680. This decision gave counsel the opportunity to impeach the police officer's testimony and to highlight the fact that Petitioner was not in the video. Id. at PageID.682. Counsel's choice was thus strategic and was reasonable under the circumstances. The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. Moss v. Hofbauer, 286 F.3d 851, 859 (6th Cir. 2002).

Second, Petitioner claims that the rest of the dash-cam video would have shown that Althea Simmons did not drop a knife in the alley but instead picked up a helmet at the scene and would have shown that two officers were present at the time. But the video is not part of the record in this case, and Petitioner does not provide an affidavit or other evidence in support of this claim. It is well-settled that conclusory allegations, without evidentiary support, are

14

insufficient to warrant federal habeas relief. See Workman v. Bell, 178 F.3d 759, 771 (6th Cir. 1998) (finding that conclusory allegations of ineffective assistance of counsel do not justify habeas relief); Wogenstahl v. Mitchell, 668 F.3d 307, 335–336 (6th Cir. 2012) (citing Workman and denying habeas relief on conclusory claims); Washington v. Renico, 455 F.3d 722, 733 (6th Cir. 2006) (finding that bald assertions and conclusory allegations do not provide a basis for an evidentiary hearing on habeas review). Petitioner fails to establish that trial counsel was ineffective in this regard.

Petitioner also asserts that trial counsel was ineffective for failing to call Althea Simmons to testify at trial. The Michigan Court of Appeals denied relief on this claim. The court explained in relevant part:

> Finally, defendant's assertion that defendant's wife Simmons should have testified is baseless as there is no offer of proof as to what she would testify that would bring about reversal. Errors in the exclusion of testimony should not upset a judgment, unless a substantial injustice has resulted. The substance of the evidence must be made known to the court through an offer of proof. People v. Parks, 478 Mich. 910, 913; 733 N.W.2d 14 (2007). "[A]n offer of proof serves the dual purpose of informing the trial court of the nature and purpose of the evidence sought to be introduced, and of providing a basis for the appellate court to decide whether to sustain the trial court's ruling." Detroit v. Detroit Plaza Ltd. Partnership, 273 Mich. App. 260, 291; 730 N.W.2d 523 (2006), see MRE 103(a)(2). Exclusions of evidence may not support a finding of error unless a substantial right of defendant has been violated. Thus, our review is limited to defendant's substantial rights. Landin v. Healthsource Saginaw Inc., 305 Mich. App. 519, 541; 730 N.W.2d 523 (2006). Without an offer of proof this Court will assume that counsel's failure to call the witness was an objectively reasonable one. Defendant has not overcome that presumption in this case and has failed to show that were such evidence admitted, there would be a reasonable probability that the trial would have resulted differently. Parks, at 913–914.
>
> Further, the claim that the object which was picked up by Simmons in the video clip deemed to be indiscernible to the viewers was a helmet is also speculative and this would not have been likely to change the outcome of trial. The jury heard from multiple eye-witnesses that defendant's blows to Holmes' back were in the same locations as his stab wounds. Furthermore, no matter what Simmons may have testified to that potential testimony would not have undermined

> Holmes' testimony. He was sure that it was defendant, not Varner, who was the one who had stabbed him, which had been followed by his description of feeling as if he had been repeatedly slapped on the back by defendant and how blood had "sprayed out" from his back as Gernaat had lifted his shirt following the fight.
>
> As defendant's argument does not amount to clear error in the record this Court concludes that trial counsel was not ineffective.

Marcotte, 2017 WL 3722004, at *5.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. As discussed, decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy. When making strategic decisions, counsel's conduct must be reasonable. Roe, 528 U.S. at 481; see also Wiggins, 539 U.S. at 522–523. The failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. Chegwidden, 92 F. App'x at 311; Hutchison, 303 F.3d at 749.

In this case, trial counsel was aware of Althea Simmons's potential to be a witness and chose not to call her to testify at trial. Petitioner fails to present an affidavit or other evidence in support of his claim that Simmons would have provided testimony that was beneficial to his defense or would have resulted in a different outcome at trial. Conclusory allegations, without evidentiary support, are insufficient to warrant federal habeas relief. Workman, 178 F.3d at 771; Wogenstahl, 668 F.3d at 335–336; Washington, 455 F.3d at 733. Moreover, the victim testified that Petitioner was the person who stabbed him, which was consistent with other eyewitnesses' recollections about the fight, and Simmons' testimony (as proposed) would not have countered that evidence. Petitioner fails to establish that trial counsel was ineffective or that he was deprived of a substantial defense. Therefore, habeas relief is not warranted on Petitioner's ineffective assistance of trial counsel claims.

### B. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. Fed. R. App. P. 22. Rule 11 of the Rules Governing Section 2254 Proceedings requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." R. Governing § 2254 Proceedings 11. A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court denies relief on the merits, the substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). In this case, Petitioner fails to make a substantial showing of the denial of a constitutional right as to his habeas claims. Therefore, the Court denies a certificate of appealability.

### C. Leave to Proceed In Forma Pauperis on Appeal

A court may grant an application for leave to proceed in forma pauperis on appeal if it finds that an appeal can be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(2). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. Foster v. Ludwick, 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002). The Court finds that an appeal could not be taken in good faith. Therefore, it denies Petitioner leave to proceed in forma pauperis on appeal.

## IV. CONCLUSION

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims. Accordingly, the Court denies and dismisses with prejudice the petition for a writ of habeas corpus. The Court also denies a certificate of appealability and denies Petitioner leave to proceed in forma pauperis on appeal.

SO ORDERED.

Dated: April 11, 2022  
    Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 11, 2022.

s/Karri Sandusky  
KARRI SANDUSKY  
Case Manager